456 F.2d 1206
 Fed. Sec. L. Rep. P 93,397
Ruth KORN, individually and as executrix of the Estate of
Ben Korn, Deceased, on behalf of herself and all other
Purchasers and Holders of Limited Partnership Interests in
63 Wall Associates similarly situated, Plaintiff-Appellant,
and Murray Wechsler et al., Intervening Plaintiffs,
v.
FRANCHARD CORPORATION et al., Defendants-Appellees.
 No. 78, Docket 35578.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 8, 1971.
Decided March 6, 1972.
 
 Herbert Brownell, New York City (Wendell Davis, Jr., and Lord, Day & Lord, New York City, on the brief), for plaintiff-appellant.
 Peter J. Schlesinger, New York City (Simpson, Thacher & Bartlett, New York City, on the brief), for defendants-appellees Franchard Corp. and Glickman Servicing Corp.
 George A. Spiegelberg, New York City (Fried, Frank, Harris, Shriver & Jacobson, and Richard M. Michaelson, New York City, on the brief), for defendants-appellees Louis A. Siegel and Seymour Young.
 Before FRIENDLY, Chief Judge, FEINBERG, Circuit Judge, and DAVIS, Judge.*
 DAVIS, Judge:
 
 
 1
 In 1961 plaintiff-appellant Ruth Korn and her late husband purchased two units of limited partnership (which have been retained) in a real estate syndication, known as 63 Wall Associates, for $10,000 (the total issue amounted to $5,200,000). In this action in the Southern District of New York, Mrs. Korn[1] seeks to recover damages and additional relief from the general partners (and others) for an allegedly misleading prospectus which is said to have been tainted by more than a hundred omissions and several misstatements, in violation of Sec. 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77q(a), Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), S.E.C. Rule 10b-5, and Secs. 352-c and 352-e of the New York General Business Law, McKinney's Consol. Laws, c. 23-A.[2] In March 1970, Judge Mansfield conditionally granted the plaintiff's unopposed request for class suit designation under Rule 23, Fed.R.Civ.P. (50 F.R.D. 57), ordering that forms for an optional "proof of claim", in addition to the regular notice under Rule 23, be sent to the more than 1,000 other purchasers of units in the limited partnership. Later, on the basis of the returns, the plaintiff moved that these proofs of claim be declared of no effect, and the defendants cross-moved to strip the suit of its class suit status. In the fall of 1970, the District Court revoked the designation. CCH Fed.Sec.L.Rep. p 92,845. This appeal followed, and the court, denying a motion to dismiss, ruled that the order cutting off class suit status was appealable because "we are convinced that at this stage Mrs. Korn's action will go no further without class suit designation." 443 F.2d 1301, 1306 (1971). The case is now before us on the merits of the appeal.
 
 
 2
 The District Court grounded its withdrawal of class suit status on two separate factors. The first, stemming from an evaluation of the returned claimproofs, was the judge's determination that the class was too small, that in any event plaintiff's interests were not typical of the proposed class, and that a class action was neither a necessary nor a superior mode of adjudication for this claim. Due to address changes over a ten-year period, about one-third of the proofs of claim were returned undelivered, but some 233 responses were received. Some 77 responses, representing 111 persons out of a potential class of over 1,000, requested exclusion. Of those who did not, 80 to 90% did not, in the lower court's view, state the approximate amount received upon sale of their units, or the particular representations on which they relied, although the great majority professed reliance in general terms. Moreover, while this suit was pending, all but seventy of the investors had accepted a check returning $4,570 for each $5,000 invested, and in doing so had signed a statement releasing appellee Franchard Corporation from any claims. Resting on its appraisal of the returned claim forms and the effect of the releases, the court found that there was no common core of reliance on any alleged misrepresentation, that the answers to the questions on the form "showed a definite apathy toward the class suit", and that the interested class was not large enough for class designation.
 
 
 3
 The second, and "equally important", component in deciding to end Rule 23 status was the conduct of the plaintiff's attorney who the court thought had acted improperly in connection with the suit and would therefore not fairly and adequately protect the class interest.
 
 
 4
 On the latter point there has been a significant operative change since the ruling below. The former attorney, whose actions were severely criticized by the District Court, has withdrawn from all connection with or participation in the litigation. New counsel, of great experience as well as unimpeachable character and reputation, entered the case at the appeal stage and will represent plaintiff in the succeeding phases. This substitution of attorneys drastically alters the nature of the case as it comes to us. Since our decision has to be forward-looking, determining the cast of the proceedings from now on, we must take account of this new situation, just as we would if we were considering an injunction for the future.[3] By the same token, we can no longer look at the suit in the same way as Judge Mansfield. One of the double bases on which he acted-in his view, an "equally important" basis which, as we read his opinion, may well have been a necessary pre-requisite to his ultimate conclusion-has now fallen entirely out of the case. Moreover, we think that the court's opinion should not have condemned the attorney's conduct without affording him a hearing on the propriety of his activities; there was, in fact, no more than some discussion at oral argument with no proper prior notice of the charges, and the court's severe strictures appeared for the first time in written form in the opinion, without the lawyer having had an adequate opportunity to meet them.[4] We are therefore called upon to consider the order, under the criteria of Rule 23, solely on the first ground the court gave (which, as we have just indicated, may not, standing alone, have been enough in its eyes for withdrawal of class status).
 
 
 5
 In a situation such as this, where circumstances have changed between the ruling below and the decision on appeal, the preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances. We do not do that in this instance because the new situation demands one result only, and discretion could not be exercised either way. In the present circumstances, as we shall show, a district judge could not decide against allowing a class action without abusing his discretion; we would have had to reverse if the lower court, on remand, had adhered to its denial of class action status.
 
 
 6
 Under Rule 23, there are six standards bearing on the case, which we shall discuss seriatim though some of the relevant factors overlap and relate to more than one criterion. Our conclusion, mindful of the admonition of liberality toward demands for class suit status in securities litigation (particularly 10b-5 suits) (Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968) cert. denied, Troster, Singer & Co. v. Green, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766; Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968) cert. denied 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459), will be that there is not now enough reason to deprive this action of such a designation or to handle it differently from the many other 10b-5 cases which have been accorded class treatment.[5]
 
 
 7
 Rule 23(a) (1)-number in class: However it be defined, the group here is sufficiently numerous that joinder of all members is impracticable. Out of some 1154 investors, almost all small holders and scattered throughout the country, only about 111 filed timely or untimely requests to be excluded; under Rule 23(c) (2) and (3), the rest are potential members. Even if it be assumed, arguendo, that the class should be limited to the 212 (or so) individuals who sent in the permissive proof of claim forms, that number would be enough.[6] Forty investors have been said to represent a sufficiently large group "where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions." Swanson v. American Consumer Industries, Inc., 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969). That is surely the case here. See also Fidelis Corp. v. Litton Industries, Inc., 293 F.Supp. 164, 170 (S.D.N.Y.1968), Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463 (E.D.Pa.1968). Similarly, should a subsequent disposition find the releases signed by the majority of investors to be valid (see the discussion, infra), the remaining group of at least seventy, who failed to sign, would suffice for a proper class.
 
 
 8
 The court below stressed the apparent unconcern of most of those who returned the optional claim forms. But even if we assume that apathy and lack of interest on the part of a great majority of the investors can be inferred from the paucity of intervenors (only 8 so far), together with the character of the responses on the optional claim-proofs,[7] still the current Rule, unlike its predecessor, does not permit that subjective inference to be used as a disqualification or to narrow the potential class. See Mersay v. First Republic Corporation of America, 43 F.R.D. 465, 470-471 (S.D.N.Y.1968). The notice provisions of subdivision (c) (2) supply the objective mechanism for an apathetic or uninterested member to opt out; it would disrupt the working of that straight-for-ward device, as well as prolong and encumber the process of deciding whether to give a class suit designation, to superimpose a disputable judgment as to the degree of enthusiasm of those who do not choose to exclude themselves. The lack or fewness of intervenors has already been rejected as irrelevant to adequacy of representation by the plaintiff (Rule 23(a) (4)),[8] and it is equally meaningless in determining whether the class is large enough. The same is true for the nature of the responses of those who did not opt out; the degree of their enthusiasm is irrelevant to the criterion of 23(a) (1) since the Rule puts its emphasis on an objective and precise manifestation of lack of interest. The drafters assumed, as we understand it, that many class-members might not be personally enthusiastic about enforcing their rights, but would at the same time acquiesce in the more galvanic parties becoming the active protagonists. Cf. Eisen v. Carlisle & Jacquelin, supra, 391 F.2d at 563, esp. fn. 7.
 
 
 9
 Rule 23(a) (2)-common questions of law or fact: This pre-condition is plainly satisfied since the alleged misrepresentations in the prospectus relate to all the investors, and the existence and materiality of such misrepresentations obviously present important common issues. The more difficult problem, touched on infra under Rule 23(b) (3), is whether the element of reliance raises a common issue, and assuming that it does not whether the common issues still predominate over the questions affecting only the individual members.
 
 
 10
 Rule 23(a) (3)-the typicality of plaintiff's claim as representative of the class: It is said that plaintiff's demand for class suit designation fails under this rubric on three grounds: (i) most of the investors signed releases, but Mr. and Mrs. Korn did not; (ii) the returned proofs of claim show that the mass of investors did not rely on the prospectus; and (iii) Mrs. Korn's deposition shows that, in any event, she did not rely on the prospectus. The releases are, indeed, troublesome but we do not consider them disqualifying in toto. The size of the ultimate class does indeed depend on whether they are valid; plaintiff insists they are not while the defendants staunchly uphold them. That is, of course, an issue which has not yet been litigated and which is not before us on this appeal. If the releases are sound, the class will necessarily be limited to the 70 or so who, like Mrs. Korn, refused to sign them,[9] but as we have said that is large enough. The great difference, however, between a class of about 70 and one of more-than-a 1,000 (if the releases are invalid)-and the possible varying consequences for the continuance of the litigation as a whole-lead us to direct that, on remand, the issue of the validity of the releases should be decided first if, as the argument in this court indicates, appellees definitely desire to interject that defense. Rule 23(c) (4) authorizes both treating the release-signers as a potential separate sub-class and giving priority to the issue of release-validity.
 
 
 11
 The points as to the presumed lack of reliance by the mass of the investors and by Mrs. Korn are also unavailing at this stage. The proofs of claim were optional[10] and were returned by only some 233 investors; the absence of any requirement of filing makes it difficult to extrapolate from the actual responses to the three-quarters of the possible class who failed to reply. Nevertheless, the District Court stressed that, although asked for the information, some 80 to 90% of the respondents were unable (or failed) to specify the particular statements on which they relied or the correct amounts they received for their investment. We do not consider this failure to be at all decisive. These were laymen, not big or skilled investors, and they answered as lay people often do. Their responses show them to be interested in getting a good investment but not very knowledgeable. Also, they may well have been confused by the form, unaware of the legal significance of the questions, careless, or lazy. Many of the returned forms are incomplete, except for name, address, and purchase price. The omission to make any other entry can suggest ignorance or absence of information, rather than lack of reliance or apathy.[11] Although the majority checked the "yes" box referring to reliance on omissions or misrepresentations without elaborating, several others left the boxes blank and wrote underneath "I don't know" or "I don't remember." On the whole, the returned proof-forms reveal a group which is lacking in the kind of sophistication and knowledge which would assure a meaningful response so many years later as to the specifics of misrepresentations or omissions, even assuming that the respondents understood the questions. As Judge Mansfield stated in the earlier opinion conditionally granting class suit status: "Part of the philosophy behind revision of Rule 23 is the desire to protect many small investors who may be unable to articulate their claims with the precision demanded of larger more sophisticated claimants. This objective is indicated by the provision (Rule 23(c) (2) (B)) that the judgment 'will include all members who do not request exclusion,"' 50 F.R.D., supra, at 60.[12] For these reasons, we think that very little significance, in determining whether to withdraw the class suit designation, can attach to the abbreviated responses mailed in by many of the investors. These documents can-not be used at this point to show lack of reliance (or unconcern)-or to separate out Mrs. Korn from her fellows. By the same token, and because return of the paper was optional, it would not be proper to limit the class to those who sent in forms.
 
 
 12
 As for Mrs. Korn's deposition, which is said to show that she never relied on the prospectus, the first thing to note is that the deposition was not before the District Court and played no part in its ruling. Taking the deposition into account, we cannot say, from her confused answers, that plaintiff is sufficiently shown not to have relied on the prospectus which her complaint challenges. At various points, she appears to have admitted reliance [T. 15, 28, 34], denied reliance [T. 38, 39], and forgotten the substance of the meeting with the salesmen ten years earlier, so that she was unable to recall whether or not she relied [T. 29, 39, 43-45]. The issue of individual reliance is one which may have to be dealt with more specifically when the case reaches its merits. See infra. At this point, there is too feeble a foundation for considering Mrs. Korn atypical or unrepresentative on the ground of her lack of reliance.
 
 
 13
 Rule 23(a) (4)-adequacy of representation by plaintiff: The major reason asserted below why this standard is not fulfilled was the alleged misconduct of plaintiff's prior counsel. As we have pointed out, his removal from the case also dissipates that justification. Some point is made that one sentence in a letter by the former attorney to all the investors irremediably infected the whole case by suggesting how the class members should testify, but the challenged words hardly bear that interpretation on any ordinary reading. There is, of course, no suggestion that present counsel are not ethical or not "qualified, experienced and generally able to conduct the proposed litigation." Eisen v. Carlisle & Jacquelin, supra, 391 F.2d at 562. Nor is there any ground for believing that, with her present counsel, plaintiff will fail to prosecute the case vigorously (so long as that is feasible). See Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y.1968); Mersay v. First Republic Corp., supra, 43 F.R.D. at 469. In these circumstances, the relative smallness of her own holdings is not important. Eisen v. Carlisle & Jacquelin, supra, 391 F.2d at 563; Dolgow v. Anderson, supra, 43 F.R.D. at 495.
 
 
 14
 Our discussion under the preceding headings shows that the representation standard is also satisfied as to plaintiff's interests being coextensive with those of the class. Her demands and her position are not atypical of the unreleased investors', or until the releases are sustained of the released investors' as well. Appellees cite, as showing a conflicting interest, her opposition to the distribution of funds by the defendants to the investors in 1968 when the releases were requested and signed. This factor existed and was known before the District Court granted conditional class suit status, in March 1970, without any objection by the appellees. We think that appellees' earlier position on this matter was correct since there is nothing to show that Mrs. Korn's stance at the time of the payment will deter her or her counsel from vigorously prosecuting this action.[13]
 
 
 15
 Rule 23(b) (3)-predominance of common issues: Relying on the answers to the "reliance" questions in the proof of claim forms and on Mrs. Korn's deposition (see supra), defendants urge that there is no "common core of reliance" on the alleged misrepresentations, but that, conversely, each member of the class will have to prove his individual reliance.[14] We have already discounted the force, at this point in the litigation, of the responses on the forms and of plaintiff's deposition. What remains is a claim that misrepresentations occurred in a certain written prospectus, mainly of omission but also in actual misstatements. The existence and materiality of these misrepresentations undoubtedly present significant common questions. We cannot say at this juncture that those common issues will be subordinated to reliance questions "affecting only individual members." The line of prior decisions suggests, quite to the contrary, that the common questions predominate where, as here, there is a single written document charged with important omissions. In fraud or 10b-5 cases decided in recent years, various rules, mechanisms, or presumptions have been put forward for mitigating the problem of showing reliance: Split trials for individual proof on reliance (Green v. Wolf Corp., supra, 406 F.2d at 291);[15] inferring from the materiality of the misstatement that a reasonable investor would have relied;[16] stressing general reliance on a common course of conduct over a period of time;[17] dispensing with or minimizing the need to prove individual reliance in cases of nondisclosure;[18] using the test, in instances of omission, of whether the claimant would have been influenced to act differently, if the undisclosed fact had been made known, than he in fact did.[19]
 
 
 16
 We do not cite these formulations to tell the District Court that it should or must follow any of them. Our purpose is only to show that, though many paths have been taken, the federal courts have concurred in adopting procedures and rules which can reduce the difficulties of showing individual reliance. More specifically, in several of these decisions the courts, faced with our problem, have agreed in comparable class suit situations that the common questions predominate and the requirement of Rule 23(b) (3) is satisfied.[20] Generally these decisions involved more complex sets of misrepresentations, raising more intricate problems of individual reliance, but nevertheless the courts ruled in favor of class suit status. To decide otherwise in this simpler case, with its single written prospectus and a major charge of nondisclosure, we would have to go directly counter to the strong and consistent trend, of which perhaps the leading pacesetter is this court's own decision in Green v. Wolf Corp., supra. See Swanson v. American Consumers Industries, Inc., 415 F.2d 1326, 1333 (7th Cir. 1969). It may be, as some recent prophecies have it, that future history will pulverize the current hope of avoiding unduly cumbersome litigation on the reliance phase of these 10b-5 class suits, but we are not yet sure enough of that speculation to insist, as a court applying existing Rule 23, that the present course must be sharply revised-at least not on the relatively simple facts of this case. See note 5, supra.
 
 
 17
 Rule 23(b) (3)-superiority of the class action: As to whether the requirement of (b) (3) that the class action be superior to other available methods for the fair and efficient adjudication of the controversy is met, we consider it dispositive that, as we said in denying the motion to dismiss this appeal, "Mrs. Korn's action will go no further without class suit designation." 443 F.2d, supra, at 1306. There is, in fact, no other available method; no other suits are pending and this one will die if class suit status is now denied. The true alternatives are continuance of the designation, or discontinuance of what may be a just and proper action.[21] In connection with the class-suit dispute, the merits were not gone into, either by preliminary hearing or adequate argument, and we are not in a position to say that the plaintiff will not, or is very unlikely to, prevail. If the claim turns out to be sound, denial of class suit status will deprive not only Mrs. Korn of recovery but also the other investors in the same situation-contrary to one of the chief goals of Rule 23 to protect claimants whose "individual claims would be too small to justify separate litigation" (3 B Moore, Federal Practice 23.45 at 23-802). On the other hand, this class suit to enforce Rule 10b-5 (and the other provisions involved) does not differ in manageability, or the other respects mentioned in 23(b) (3), from similar litigation which has been allowed such status. All this being so, a class action must be taken to be the superior method of adjudication for the claim.
 
 
 18
 The residue of our consideration of all the appropriate clauses of Rule 23, in the present posture of the case, is that plaintiff's action now meets all the requirements for class suit status and should be maintained in that category. Since the District Court ruled otherwise, we reverse its order and remand the case with directions that the action be continued as a class action and that notice be sent to the investors, so indicating and countermanding the contrary notification apparently sent after the lower court's order which is now set aside. We also direct, as indicated above, that the issue of the validity of the releases be disposed of as soon as practicable, so that the size of the ultimate class can be definitely determined before the substantive merits of the claim are adjudicated.
 
 
 19
 Reversed and remanded.
 
 
 
 *
 Of the United States Court of Claims, sitting by designation
 
 
 [1]
 When the complaint was filed in 1967, Mr. Korn was alive and a plaintiff. He has since died and Mrs. Korn sues for herself and as executrix
 
 
 [2]
 The main charges of the complaint are: overvaluation of property; undisclosed benefits to the seller, a stockholder of appellee Glickman; erroneous projections of income and expenses, including no provisions for refinancing the second mortgage and making capital improvements while understating the amount needed for payroll and real estate taxes; undisclosed relationships between Glickman and similar real estate partnerships; lack of assets of the lessee
 
 
 [3]
 Cf. Meccano, Ltd. v. John Wanamaker, New York, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822 (1920); Watts, Watts & Co. v. Unione Austriaca, 248 U.S. 9, 21, 39 S.Ct. 1, 63 L.Ed. 100 (1918); Patterson v. Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 79 L.Ed. 1082 (1935); Latimer v. Cranor, 205 F.2d 568, 569 (9th Cir. 1953)
 
 
 [4]
 We add explicitly, so that there will be no misunderstanding, that we have not considered or evaluated the prior attorney's alleged misconduct, nor the District Court's strictures on that conduct, and we neither approve nor disapprove the court's statements on the point, except for its failure to give the lawyer adequate prior notice and hearing
 
 
 [5]
 Some thought is being given to possible changes in Rule 23; the new Advisory Committee on Civil Rules has announced that it is making a study of the operation of the current Rule. It goes without saying, however, that we must apply the Rule in its existing form and in the light of the purposes of that formulation
 
 
 [6]
 As indicated infra, we do not believe that, on the present showing, the class can be so limited. There was no requirement that the forms be submitted, merely a request
 
 
 [7]
 The District Court's evaluation of the responses is subject to considerable question. See infra, under Rule 23(a) (3)
 
 
 [8]
 Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968); Hohmann v. Packard Instrument Co., 399 F.2d 711, 714 (7th Cir. 1968); Epstein v. Weiss, 50 F.R.D. 387, 391 (E.D.La. 1970); Weisman v. MCA, Inc., 45 F.R.D. 258, 262 (D.Del.1968); see "Rule 23: Categories of Subsection (b)", 10 B.C. Ind. & Com.L.Rev. 539, 545-47 (1969); Ford, "Federal Rule 23: A Device for Aiding the Small Claimant," 10 B.C. Indus. & Com.L.Rev. 501, 505 ff. (1969)
 
 
 [9]
 Perhaps with the addition of former owners who had sold their interests before the distribution of the checks, and were therefore not asked to give a release
 
 
 [10]
 The court-approved form asked for the name and address of the investor, the numbers and dates of units purchased and sold, and the following information:-whether the purchaser relied on any representation contained in the prospectus, whether "you now claim that there were any material omissions from the Prospectus", and whether any other representations were relied upon by the claimant and, if so, "state what they were and who made them."
 
 
 [11]
 In its first opinion, the court below gave as one reason for its refusal to make the filing of the proofs of claim mandatory rather than optional: "In the present case, for instance, many owners of partnership interests may fail to respond merely because they have misplaced their certificates or do not have immediately available the essential information." 50 F.R.D., supra, at 60
 
 
 [12]
 The proof of claim procedure has usually been invoked in antitrust claims made by government entities where detailed records were kept and objective questions on proof of damages asked. "The Impact of Class Actions on Rule 10b-5", 38 U.Chi.L.Rev. 337, 351, fn. 80 (1971)
 
 
 [13]
 In both Schy v. Susquehanna Corp., 419 F.2d 1112 (7th Cir. 1970), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 and Carroll v. American Federation of Musicians, 372 F.2d 155, 161-162 (2d Cir. 1967), vacated, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968), there was direct and obvious conflict between the interests of the representative and other members of the class. That was also so in Nolen v. Shaw-Walker Co., 449 F.2d 506 (6th Cir. 1971)
 
 
 [14]
 In its notes on the new Rule 23, the Advisory Committee on the Civil Rules said (39 F.R.D. 69, 103 (1966)):
 "[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."
 
 
 [15]
 See, also, Feder v. Harrington, 52 F.R.D. 178 (S.D.N.Y.1970); Epstein v. Weiss, 50 F.R.D., supra, at 393-394; Fogel v. Wolfgang, 47 F.R.D. 213 (S.D.N.Y.1969); Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60, 64 (S.D.N.Y.1969); Mersay v. First Republic Corp., supra, 43 F.R.D., supra, at 471
 
 
 [16]
 Kahan v. Rosenstiel, 424 F.2d 161, 173-174 (3rd Cir. 1970), cert. denied, Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)
 
 
 [17]
 Epstein v. Weiss, supra, 50 F.R.D. at 393; Dolgow v. Anderson, 43 F.R.D., supra, at 489; Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964). See Moscarelli v. Stamm, 288 F.Supp. 453, 462 (E.D.N.Y.1968)
 
 
 [18]
 Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 797 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50; Epstein v. Weiss, supra, 50 F.R.D. at 393; Bromberg, Securities Law: SEC Rule 10b-5, Sec. 8, 6, p. 209 (1968); Bernfeld, "Class Actions and Federal Securities Laws", 55 Cornell L.Rev. 78, 84, n. 43 (1969). See 3 Loss Securities Regulation 1766 (1961). The failure to disclose material facts is necessarily common to all stockholders, Esplin v. Hirschi, 402 F.2d 94, 99-100 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)
 
 
 [19]
 List v. Fashion Park, Inc., 340 F.2d 457, 463 (2d Cir. 1965); Speed v. Transamerica Corp., 99 F.Supp. 808, 829 (D. Del., 1951); Myzel v. Fields, 386 F.2d 718, 735 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); City Nat'l Bank of Fort Smith, Ark. v. Vanderboom, 422 F.2d 221, 231 (8th Cir. 1970), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560; Mader v. Armel, 402 F.2d 158, 163 (6th Cir. 1968), cert. denied, Young v. Mader, 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459; Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1171-1172 (2d Cir. 1970)
 
 
 [20]
 An exception may be the early case of Berger v. Purolator Products, 41 F.R.D. 542 (S.D.N.Y.1966), but there a prospectus was not involved and the court was dealing with a motion for settlement and dismissal. "Securities Fraud Class Actions", 36 Geo.Wash.L.Rev. 1150, 1156, n. 56 (1968). Appellees cite Morris v. Burchard, 51 F.R.D. 530 (S.D.N.Y.1971), for the proposition that a securities fraud action is unmanageable due to individual differences in proof of reliance, but in that case the defendant made oral misstatements, which were not standardized and which did not emanate from a single course of conduct
 
 
 [21]
 See Weiss v. Tenney Corp., 47 F.R.D. 283, 291 (S.D.N.Y.1969); Block, "Class and Derivative Actions Under the Securities Laws," 26 Bus.Law. 425, 429 (1970)