**Minnie DORFMAN**

v.

**FIRST BOSTON CORPORATION et al.**

**JUSTER, INC.**

v.

**FIRST BOSTON CORPORATION et al.**

**Civ. A. Nos. 70-1845, 71-269.**

United States District Court,
E. D. Pennsylvania.

Aug. 7, 1973.

Opinion on Motion for Reconsideration
April 17, 1974.

---

**2.** Opinion filed August 30, 1973. Opinion filed October 23, 1973.

Mitchell A. Kramer, Philadelphia, Pa., for plaintiff Minnie Dorfman.

Herbert I. Deutsch, New York City, for plaintiff Juster, Inc.

Joseph W. Swain, Jr., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant Peat, Marwick, Mitchell & Co. and Liaison Counsel for defendants.

Tom P. Monteverde, Pelino, Wasserstrom, Chucas & Monteverde, Philadel-

phia, Pa., for defendants The Pennsylvania Co. and W. W. Riley.

Raymond K. Denworth, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants Otto N. Frenzel, Edward J. Hanley, Fred M. Kirby, Franklin J. Lunding, Thomas L. Perkins, and Daniel E. Taylor.

Michael A. Cooper, Sullivan & Cromwell, New York City, for defendant The First Boston Corp.

Peter Gruenberger, Weil, Gotshal & Manges, New York City, for defendant Glore Staats Corp.

Edward C. German, LaBrum & Doak, Philadelphia, Pa., for defendant David C. Bevan.

James W. Deer, Holtzmann, Wise & Shepard, New York City, for defendant Robert S. Odell.

Thomas B. Rutter, Philadelphia, Pa., for defendant Alfred E. Perlman.

Bennett G. Picker, Steven R. Waxman, Bolger & Picker, Philadelphia, Pa., for defendant Stuart T. Saunders.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs Minnie Dorfman ("Dorfman") and Juster, Inc. ("Juster"), purchasers of Pennsylvania Company ("Pennco") debentures, have brought these actions to recover damages they claim to have sustained as a result of an allegedly false and misleading offering circular issued by defendants in connection with the sale of the debentures. We have previously granted defendants' motion to dismiss as to several claims in plaintiffs' consolidated amended complaint, leaving before us only those claims asserted under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Dorfman v. First Boston Corp., 336 F.Supp. 1089 (E.D.Pa.1972). Plaintiffs now move pursuant to F.R.Civ.P. 23(a) and 23(b)(3) for a class action determination.

In December 1969, Pennco issued 9% Sinking Fund Debentures due 1994 in the principal amount of $50,000,000.00. The offering circular pursuant to which the debentures were sold, and which plaintiffs allege contained misstatements and omissions of material facts, was dated December 16, 1969. Dorfman, a retired schoolteacher with little experience and no sophistication in the securities markets, purchased on the offering ten debentures at the public offering price of $1,000.00 per debenture. Juster, Inc., a family corporation organized to buy and sell securities for investment purposes, purchased $600,000.00 principal amount of debentures at a cost of $356,000.00 in the aftermarket, shortly after defendant Penn Central Transportation Company, of which Pennco is a wholly-owned subsidiary, went into reorganization.

The defendants other than Pennco and Penn Central Transportation Company are First Boston Corporation and Glore Forgan, Wm. R. Staats, Inc., the principal and managing underwriters of the Pennco debentures; Peat, Marwick, Mitchell and Company, the auditors and public accountants of Penn Central Transportation Company and Pennco at the time of the issuance of the offering circular; and several individuals who were officers and/or directors of Pennco and Penn Central Transportation Company at that time.

Defendants oppose the motion for class action determination. They contend that neither plaintiff is a member of the class they seek to represent and that even if either is a member, neither is an adequate class representative. They also argue that the requirements of Rule 23(b)(3) have not been met because plaintiffs did not rely solely on the offering circular in making their purchases and therefore common questions of law and fact do not predominate, and because a class action is not

the superior method of adjudicating this controversy.

## I. *Membership in the Class*

In providing that "one or more members of a class" may sue as representative parties, Rule 23 codifies the settled principle that only a member of a class may sue on behalf of the class. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed.2d 22 (1940). Defendants contend that neither plaintiff meets this prerequisite.

### A.

In their motion for class action determination, plaintiffs define the class they seek to represent as consisting of "all persons who purchased the 9% convertible subordinate[d] debentures of Pennsylvania Company due 1998 [*sic*] *in reliance on the Offering Circular*." [Emphasis added.] Defendants have taken the depositions of Dorfman and of Harold Drimmer, the president of Juster, on matters relating to this class action motion. They contend that statements made at the depositions show that Dorfman never even read the offering circular, but instead relied solely on the advice of her stockbroker, and that Juster purchased its debentures on the basis of its president's extensive independent research and knowledge of market conditions, placing little or no reliance on the statements in the offering circular. Defendants ask us to conclude that neither Dorfman nor Juster purchased the debentures "in reliance on" the offering

circular and thus are not members or proper representatives of the class they have defined.

### Dorfman

■■■ It is clear from the notes of testimony that Dorfman, unsophisticated in finance and the law and unused to questioning by lawyers, was at times flustered and confused during her deposition. Dorfman's deposition testimony raises substantial doubt as to whether she relied on or even in the ordinary sense of the word read the offering circular.[1] *Compare* Korn v. Franchard Corp., 456 F.2d 1206, 1211 (C.A.2, 1972). But we need not reach the issue of Dorfman's reliance, for we have concluded that a plaintiff in an action brought under the antifraud provisions of the securities laws need not prove that he actually relied on the alleged misstatements or omissions. Therefore, Dorfman's reliance or lack of reliance on the offering circular is of no consequence for a determination of her membership in the class she seeks to represent.

There was until recently an apparent conflict among the circuits on whether reliance is an essential element of an action for damages under the securities laws. Although neither Section 10(b) nor Rule 10b–5 nor Section 17(a) makes any mention of reliance, the First Circuit and the Second Circuit had held that a plaintiff must prove that he relied on the defendant's nondisclosures or misstatements. Rogen v. Ilikon Corp.,

[1]. Dorfman testified that at the time she received the circular she was suffering from a cataract condition and could read only with a magnifying glass, and even then her reading was "very belabored." (N.T. 16). She "glanced quickly through [the offering circular] and the comprehension didn't go with it." (N.T. 17). She appears to have gleaned from the circular only the fact, written in large print on the cover page, that the Pennco debentures would pay 9% interest. She answered, "No," without qualification, to the following questions posed by counsel

for defendant First Boston Corporation: "Did you read any of the financial statements that are at the back of the document?" "Did you read the section that describes the proposed N&WCo merger?" "Did you read the section entitled 'Business of Penn Co'?" "Did you read the capitalization of page 4 of the document?" "Did you read the Statement of Earnings, pages 5 and 6?" "Did you read the sections describing subsidiaries of the Penn Co?" There was little else in the offering circular.

361 F.2d 260 (C.A.1, 1966); List v. Fashion Park, Inc., 340 F.2d 457 (C.A.2, 1965), cert. denied, 382 U.S. 811, 86 S. Ct. 23, 15 L.Ed.2d 60 (1965).[2] More recently, however, the Third Circuit apparently sounded the death knell for the reliance requirement when it held in Kohn v. American Metal Climax, 458 F. 2d 255, 269 (C.A.3, 1972) that

> " * * * those alleging a violation of Rule 10b–5 have an obligation to show a fraudulent and material misrepresentation and * * * to the extent a reliance factor is required, in the present context it is encompassed by the finding [of the District Court] that the misrepresentation was material." 458 F.2d at 269.

*See also* Kahan v. Rosenstiel, 424 F.2d 161, 173 (C.A.3, 1970), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970) ("Proof of reliance is not an independent element which must be alleged to establish a cause of action.").

Whatever conflict there may have been among the circuits has now been resolved by the Supreme Court's decision in Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), a class action in which plaintiffs, mixed-blooded Indians, sought under Section 10(b) to recover damages sustained as a result of nondisclosures by the transfer agents of shares in a corporation plaintiffs had organized to manage their mineral rights and unadjudicated claims against the United States. The Court of Appeals for the Tenth Circuit had held that plaintiffs could not recover unless they could prove reliance. The Supreme Court reversed, holding:

"Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of his decision. [Citations omitted.] This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact. Chasins v. Smith, Barney & Co., 438 F.2d at 1172." 406 U.S. at 153–154, 92 S.Ct. at 1472.

*Ute Citizens* therefore eliminates the need for plaintiffs in nondisclosure cases either to allege or to prove reliance. *Accord*, Entin v. Barg, 60 F.R.D. 108 (E.D.Pa. 1973); Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, 353 F. Supp. 264 (S.D.N.Y.1972).

■ If proof of actual reliance is unnecessary, there can be no conceivable reason for requiring proof of reliance as a prerequisite for class membership. We therefore read plaintiffs' apparent restriction of their class to those debenture holders who purchased *in reliance on* the offering circular as surplusage which may be ignored and conclude that Dorfman, whether or not she relied on the alleged misstatements and omissions, is a member of the class she seeks to represent.

*Juster*

We are not convinced by defendants' argument that, because Juster's president did independent research before it purchased the debentures, the purchase was not made in reliance on the offering

2. The cases which read a reliance requirement into Section 10(b) and Rule 10b–5 did so chiefly by analogizing to the tort of deceit at common law. In order to recover damages for deceit, a plaintiff must show that he relied upon the alleged misrepresentation in taking or refraining from action and that his reliance was justifiable. *See* Kohn v. American Metal Climax, Inc., *supra*, 458 F.2d at 288

(Adams, J., concurring and dissenting). The common law test of reliance—whether "the misrepresentation is a substantial factor in determining the course of conduct which results in the recipient's loss," Restatement, Torts § 546 (1938)—was held to have been "carried over into civil suits under Rule 10b–5." List v. Fashion Park, Inc., *supra*, 340 F.2d at 463.

circular. However, what we have said about the reliance requirement with regard to Dorfman applies with equal force to Juster; Juster is a member of the class.

### B.

Defendants contend that because the complaint contains allegations that "the plaintiff and the class have been substantially injured and damaged" by the allegedly false and misleading statements in the offering circular, plaintiffs' purported class consists only of those debenture holders who suffered actual financial loss. In their briefs and by an impressive array of affidavits and exhibits, defendants argue that neither plaintiff has suffered any loss, at least as profit and loss are measured by any of the three methods of computation suggested by defendants. We are asked to conclude that the absence of actual damages precludes both plaintiffs from membership in and hence the right to represent the class.

■ We disagree with defendants' position. An allegation of damages in a complaint does not restrict class membership only to those who can prove that they have in fact suffered damages. One may be a member of a class in an action for damages even though he may ultimately be unable to prove any monetary loss. To read an allegation of damages in the complaint as restricting class membership to individuals who can prove their actual damages at the time the class is formed would frustrate the limited purposes of Rule 23. It would mean that before deciding a Rule 23 motion in an action for damages, a court would invariably have to determine whether the putative class representative had himself suffered damages. In other words, an allegation of damages in the complaint would in effect transform a class action motion into a motion for summary judgment as to the representative plaintiff's damages. In Mersay v. First Republic Corp. of America, 43 F.

R.D. 465 (S.D.N.Y.1968), a 10b–5 case, the defendants opposed the class action motion in part on the grounds that the representative plaintiff would be able to prove neither reliance nor damages and, therefore, his claims would not be typical of those of the class. The court refused to pass on those questions, stating:

> "This contention goes to individual substantive disputes that should await trial. [Citation omitted.] If Mersay were required to prove his own reliance or damages at this stage, it would follow that no class action could stand until the plaintiff proved every material element of his individual claim. Clearly, such a procedure was not envisioned under rule 23."

43 F.R.D. at 469.

We agree.

If we were to decide at this point whether Dorfman and Juster have suffered damages, the only way to do so would be to have a preliminary hearing at which defendants' contentions could be either supported or disproved. Although preliminary "mini-hearings" were proposed as an effective way of rendering class actions more manageable, Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968), this practice has met with considerable disapproval, most recently and most vigorously in the Second Circuit's decision in Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (C.A.2, filed May 1, 1973).

> " * * * [N]either in amended Rule 23 nor in any other rule do we find provision for any tentative, provisional or other makeshift determination of the issues of any case on the merits for the avowed purpose of deciding a collateral matter * * *. In most cases the so-called tentative findings and conclusions arrived at without the salutary safeguards applicable to all full scale trials on the merits will be extremely prejudicial to one or the other of the parties who bear the

brunt of such findings and conclusions, and such prejudice may well be irreparable.

\* \* \* \* \* \*

"No provision is made in amended Rule 23 for any such mini, preliminary or other hearing on the merits. It does violence to the whole concept of summary judgment, and cannot be reconciled with the requirement in Rule 23 that 'as soon as practicable after the commencement of the action' the question of class suit *vel non* be decided." 479 F.2d at 1015–1016.

*See also* Miller v. Mackey Int'l., Inc., 452 F:2d 424, 427 (C.A.5, 1971).

We can perceive no meaningful difference between the inquiry into the merits which was condemned in *Eisen* and the inquiry into plaintiffs' damages which defendants seek in connection with this motion. Nor do we think that conducting the inquiry by affidavit, as defendants have done, cures the defects of this procedure.

In sum, therefore, we conclude that plaintiffs are members of the class they seek to represent.

## II. *Adequacy of Representation*

■ Under amended Rule 23 the rights of absent class members are conclusively determined by the class action unless they affirmatively opt out of the class. It is therefore important that a court consider with great care whether the representative parties will "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4). The standards of Rule 23(a)(4) are met if it appears certain (a) that the representative party and his counsel will vigorously prosecute the action and (b) that the interests of the class representative are not in conflict with those of the other members of the class. Dolgow v. Anderson, *supra*, 43 F.R.D. at 494; Mersay v. First Republic Corp. of America, *supra*, 43 F.R.D. at 469–470; *see* Eisen v. Carlisle & Jacquelin, 391 F. 2d 555, 562–563 (C.A.2, 1968); 3B J.

Moore, Federal Practice ¶ 23.07 (2nd ed., 1969).

■ Defendants appear to contend that neither Dorfman nor Juster will vigorously prosecute this action, Dorfman because she stated at her deposition that she was "satisfied" with her "good investment" and seemed confused over her representative status, and Juster because, according to its president, it has retained eight of its 600 debentures "as a matter of principle \* \* \* to see this action through." We disagree. Neither the personality nor the motives of the plaintiffs is determinative of whether they will provide vigorous advocacy for the members of the class. Dorfman is obviously unschooled in the law and was flustered at her deposition but it can hardly be said that she, through her attorney, has been anything but a vigorous and tenacious plaintiff. The same may be said of Juster; principle, coupled with the hope of rectifying a claimed loss and the prospect of a substantial recovery, may be as strong a spur to vigorous prosecution as many other motivations.

■ Defendants also argue that the interests of both Dorfman and Juster have been shown to be in conflict with those of the class because they have failed to name as defendants the firms, both of which were members of the original underwriting syndicate, that employ the brokers from whom they purchased their debentures. We find no indication of conflict in plaintiffs' decision not to name the brokerage firms as party defendants. A plaintiff, even one purporting to represent a class, surely must exercise some discretion in choosing his defendants. Without passing in any way on the merits of an action against other members of the original underwriting syndicate, we believe plaintiffs' decision to name only the principal and managing underwriters was within the realm of propriety and does not prejudice the rights of absent class members.

Although we have concluded that Dorfman and Juster will fairly and adequately protect the interests of the class, it is important to emphasize that if at any time it appears that the quality of representation is less than satisfactory, we are empowered under Rule 23(d)(2) to give the members of the class an opportunity to signify whether they consider the representation fair and adequate. We shall exercise that power if it becomes necessary to do so.

### III. Common Questions of Law or Fact and Superiority of Class Action

Plaintiffs have satisfied the prerequisites of 23(a). In addition, since they have made this motion pursuant to 23(b)(3), they must demonstrate "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A.

Defendants argue that common questions do not predominate because, in the words of the 1966 Advisory Committee Note to Rule 23, "there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." 39 F.R.D. at 103.

■ Reliance was long an especially troublesome problem in securities class actions.[3] However, whatever problems may have existed have been answered by Ute Citizens. If individual plaintiffs need no longer prove actual reliance, there can be no reason for denying class action status because of variations in individual reliance. Reliance is simply irrelevant. Therefore, whatever variations there may have been in kind or degree of reliance have no bearing on whether this action should proceed as a class action. Accord, Entin v. Barg, supra.

■ The possibility that plaintiffs and perhaps other debenture holders relied on representations other than those in the offering circular does not lead us to conclude that individual questions of law and fact predominate.

"While there may be different kinds of misrepresentations alleged with respect to different plaintiffs, including some oral misrepresentations, and while such factors might have led to a dismissal under the old rule [citations omitted] the new Rule 23 provides the flexibility to permit this action to proceed." Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y. 1966).

The central issue, common to all purchasers of the Pennco debentures, is whether the alleged statements and omissions made in the offering circular were false and misleading and if so, whether they were material.

"The existence and materiality of these misrepresentations undoubtedly present significant common questions. * * * The line of prior decisions suggests * * * that the common questions predominate where, as here, there is a single written document charged with important omissions." Korn v. Franchard, supra, 456 F.2d at 1212.

Although the existence of other representations on the same matters may somewhat complicate the conduct of this case as a class action, and while issues such as damages are presumably not amenable to class action treatment, the substantial common questions raised by the allegations concerning the offering

---

3. See generally Korn v. Franchard, supra, 456 F.2d at 1208–1209; Note, "The Impact of Class Actions on Rule 10b–5," 38 U.Chi.L.Rev. 337, 345–56 (1971); Bernfeld, "Class Actions and Federal Securities Laws," 55 Corn.L.Rev. 78, 84 (1969).

circular far outweigh questions affecting only individual class members.

### B.

Defendants contend that a class action is not the superior method of adjudication because: (1) the purported class consists mainly of large institutional investors who would be well equipped to vindicate their own rights if they chose to, and therefore this is not a case in which the class action device is needed to provide "small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d at 566–567; (2) the apparent silence of the members of the purported class indicates both that they do not consider the offering circular deficient and that there is no danger of the court's being inundated with many lawsuits involving the same issues; and (3) rather than achieving "economies of time, effort, and expense," 1966 Advisory Committee Note, 39 F.R.D. 98, 102–103 (1966), the maintenance of this action as a class action would create unnecessary burdens for the court and the defendants. None of these arguments is persuasive.

Defendants make much of the fact that as of June 1, 1970, the date of the first interest payment, approximately 85% of the debentures were held in blocs of $25,000 or more, with 61% being held in blocs of $200,000 or more, and that the holdings of ten institutional investors accounted for 40% of all debentures outstanding at that time. (Affidavit of Carole E. Broderick, Esq.) Even assuming, which we do not, that a class action is appropriate *only* if the class is made up of small claimants, we are unable to draw any relevant conclusions from the figures before us. We cannot divine, for example, what portions of the institutional holding were only as of record for individuals and therefore cannot determine the size of the holdings of the beneficial owners of the Pennco debentures. It would be inappropriate to take the drastic step of denying class status on the basis of defendants' figures.

Nor is the fact that only Dorfman and Juster have filed lawsuits and no other debenture holders have moved to intervene of any consequence at this stage in the proceedings. The Court of Appeals for the Third Circuit has recently passed on the weight to be given a lack of expression of interest in the litigation by most class members before a class action determination is made. In Katz v. Carte Blanche Corp., No. 72–1054 (C.A.3, filed May 22, 1973), a class action suit brought on behalf of credit card holders under the Truth in Lending Act, the defendant-appellant, noting that few members of the class had shown any interest whatever in the litigation, contended that class action treatment was improper and merely permitted a few individual plaintiffs to impose a crushing burden on the defendant corporation. The Court of Appeals stated:

"The 1966 amendments to Rule 23 do not make positive assertions of interest the requirement for participation in the class. Rather, it installed the controversial 'negative option' system. Only if one wants to opt out is affirmative action required. The resultant thrust of the rule is not as to the quantity of the expressed interest. In fact, the absence of any affirmative manifestation by other members of the class at this initial stage seemingly would indicate their interest in being included. Instead, the central point of inquiry for the district court under the amended rule is the quality of the class representation. Therefore, we find the alleged lack of interest at this point immaterial to the question of whether this class action should be allowed to proceed." Slip op. at 7.

Finally, to permit this action to proceed as a class action would not be burdensome to the court or to the defendants. On the contrary, class action

treatment will permit us to decide the important issues raised by plaintiffs' complaint in one unified proceeding and will save the defendants from the possibility, which may or may not come to pass, of having to defend numerous individual lawsuits.

## IV. *Definition of the Class*

■ We have decided to divide the class of debenture holders into two subclasses, as we are empowered to do by Rule 23(c)(4). One subclass, to be represented by Dorfman, will consist of those who purchased the Pennco debentures before June 21, 1970, the date on which the Penn Central Transportation Company petitioned for reorganization under Section 77 of the Bankruptcy Act; the other will consist of those debenture holders who purchased after June 21, 1970 and will be represented by Juster. The reason for creating subclasses is that after the Transportation Company went into reorganization, information concerning some of the matters covered by the offering circular received wide public circulation. It is therefore possible that certain considerations will apply in a determination of some of the issues in this litigation as they relate to the post-reorganization purchasers which would have no bearing on those who bought before June 21. It is advisable in the interests of efficiency and manageability to create the two subclasses at this time.

■ Defendants urge us to exclude from the class, and by implication from either of the subclasses, those debenture holders who exercised the privilege provided by the terms of the Pennco debentures to exchange their debentures for shares of common stock of the Norfolk & Western Railway Company. We shall not do so. While it is unquestionably true that those who took advantage of the exchange option are no longer Penn-

co debenture holders, they nonetheless were at some point purchasers of Pennco debentures and therefore would fall within the definition of one of the two subclasses. Their change of status may well have some bearing on the issue of damages but in no way affects the propriety of including them in either of the two subclasses.

### OPINION AND ORDER
#### On Motion for Reconsideration

Plaintiffs, holders of certain Pennsylvania Company debentures, have brought this lawsuit to recover damages which they claim they and others similarly situated have sustained as a result of an allegedly misleading offering circular issued in connection with the sale of the Pennco debentures. They allege that defendants, in preparing and disseminating the offering circular, have violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 and §§ 17(a)(1) and 17(a)(3) of the Securities Act of 1933.[1] We have previously granted plaintiffs' motion for class action determination and now have before us defendants' motion seeking reconsideration of that decision.

Defendants argue that we erred in holding that 10b–5 plaintiffs need not prove reliance on defendants' misrepresentations and, therefore, that whether or not the named plaintiffs relied or did not rely on the alleged misrepresentations in the offering circular is irrelevant to a determination of whether they are members of, and thus can properly represent, the class. They contend that our discussion of reliance is not in keeping with the Third Circuit's nearly contemporaneous holding in Landy v. Federal Deposit Insurance Corporation, 486 F.2d 139 (C.A.3, 1973), that "reliance is necessary under rule 10b–5." 486 F.2d at 170.

■ We agree with defendants that Landy requires some clarification of our

---

1. We have dismissed several other claims originally advanced by plaintiffs. Dorfman v. First Boston Corp., 336 F.Supp. 1089 (E.D.Pa.1972).

previous opinion. Landy does make it clear that at least in this Circuit the reliance requirement has not been eliminated from Rule 10b–5. But while reliance is an essential element of liability in a 10b–5 action, proof of actual individual reliance is not always required. Such proof was necessary in Landy because the allegedly misleading financial reports were not made "in a manner reasonably calculated to influence the investing public." 486 F.2d at 168.

> "Since [the accountant's] reports to the directors were not prepared for or disseminated to the public or the stockholders, *the presumption of reliance sometimes used in other circumstances when a statement is material is inapplicable here.*" [Emphasis added.] *Id.*

The underlying rationale of our previous opinion, although perhaps not expressed as clearly as it should have been, was that this, unlike Landy, is a case in which reliance may be presumed from a finding at trial of materiality. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Kohn v. American Metal Climax, 458 F.2d 255 (C.A.3, 1972). This does not mean, contrary to what some language in our previous opinion might have suggested, that reliance is not an essential element of a 10b–5 action. It means only that the individual class members may not have to prove actual individual reliance at trial.

The problem here is that while the individual members of the plaintiff class may not have to prove individual reliance, the named plaintiffs have made statements at their depositions which defendants interpret to mean that they did not rely on the offering circular, thereby rebutting at this stage in the proceedings the presumption of reliance which may be made from a finding of materiality. Their statements, if we were to read them as defendants do, would presumably foreclose the issue of reliance and deny plaintiffs membership

in a class composed of debenture holders who relied on the offering circular and which will, in one way or another, have to prove such reliance.

■ We decline to find on the basis of the depositions taken thus far that plaintiffs are not members of the class they purport to represent. Juster's case is the simpler of the two. It is undisputed that Juster's president did independent research into the soundness of Pennco debentures and it appears that by the time he bought them the Penn Central Transportation Company had already filed for reorganization and there had been considerable public comment in the press on the real financial condition of the Penn Central complex. It is equally clear, however, at least on the basis of Mr. Drimmer's deposition, that he read the offering circular. At this stage of the proceedings we are unable to say, and think it totally inappropriate to hazard a guess, that these facts prove either that Juster could not have relied on the offering circular or that if it did, its reliance was unjustified. We therefore do not decide the issue of reliance against Juster at this stage in the proceedings.

The Dorfman problem is somewhat more complex. Her deposition suggests that although she received the offering circular and says she read it, practically no comprehension accompanied the reading. She decided to purchase the Pennco debentures, it seems, because her broker advised her to do so, telling her in the course of two or three telephone conversations that it was a good investment.

Although Mrs. Dorfman's description of her reading and understanding of the offering circular might go a long way toward negating her claim of reliance insofar as it is grounded on her personal perusal of the circular, we do not agree with defendants that her deposition establishes conclusively that she did not rely on the alleged misrepresentations in the offering circular. It is also not clear

at this point precisely what her broker told her to support his recommendation, nor is it at all clear what the basis of his recommendation was. We cannot conclude at this juncture that the broker did not place reliance on the offering circular in making his recommendation to Mrs. Dorfman, and we do not think it appropriate to decide the difficult question of whether, if he made his recommendation in reliance on statements in the offering circular, that would suffice to satisfy Mrs. Dorfman's reliance requirement.[2] We point these ambiguities out not to suggest in any way that we have reached any conclusions as to the factual and legal questions involved, but only to point out that they cannot and should not be resolved on the record as it stands at this stage in the proceedings.

■ It may be, as defendants strenuously argue, that neither Dorfman nor Juster can prove all of the elements that must be proved as a prerequisite to recovery under 10b–5. However, the sufficiency of their individual claims should not be tested in connection with a motion for class action determination. A motion for summary judgment against Dorfman and/or Juster might well be appropriate here, either now or after further discovery. An entry of summary judgment against either or both would of course have a direct bearing on whether this lawsuit could or should proceed as a class action; those problems can be met if and when the need arises. In any event, it is far preferable to reach the merits by means of summary judgment or, if necessary, at trial than it is to transform a motion for class action determination into a miniature trial of the merits. The reasons we gave for declining to decide the question of plaintiffs' damages[3] at this stage apply with equal force here and need no further elaboration.

In sum, then, we reaffirm our decision that this lawsuit may proceed as a class action and that Dorfman and Juster may represent the class of debenture holders who purchased in reliance on the December 16, 1969 offering circular as that class is defined in our previous opinion.[4]

2. This is not analogous to cases in which defrauded investors have sued defendants who made a number of separate oral misrepresentations. Those cases have properly been held not to involve a common core of misrepresentation and hence not suited to class action treatment. *E. g.,* Morris v. Burchard, 51 F.R.D. 530 (S.D.N.Y.1971); Moscarelli v. Stamm, 288 F.Supp. 453 (E.D.N.Y.1968). It may be argued that the broker's statements here were merely an agent's relaying of the contents of the offering circular to his principal. We say this not to intimate any conclusion, but only to suggest that this case is on a different footing from cases in which defendants have made separate oral misrepresentations.

3. Defendants also contend that we erred in not finding that neither plaintiff has suffered any actual loss and therefore are not members of a class whose members have suffered damages. We find defendants' arguments unpersuasive and reaffirm *in toto* our prior discussion of this issue.

4. The Court of Appeals for the Third Circuit has very recently handed down its landmark decision *en banc* in Katz v. Carte Blanche Corp., 496 F.2d 747 (C.A.3, filed March 15, 1974). *Katz* deals with issues having the greatest significance for all class actions but because of the issues in this case and the postures of the parties, we do not read it as requiring a rethinking of our decision to have this lawsuit proceed as a class action. We think in any event that it would be unwise for us to deal *nostra sponte* with questions that might be raised by *Katz.*