Luis BOLANOS, et al., Plaintiffs,

v.

NORWEGIAN CRUISE LINES LIMITED, d/b/a Norwegian Cruise Lines, et al., Defendants.

No. 01 Civ. 4182 RMBAJP.

United States District Court, S.D. New York.

Nov. 26, 2002.

Paul T. Hofmann, Cappiello, Hofmann & Katz, Aurora Cassirer, Mark I. Schlesinger, Jenkins & Gilchrist, Parker, Chapin, LLP, New York City, for plaintiffs.

Christopher G. Kelly, Chester D. Hooper, Hugh A. Forde, Haight, Gardner, Holland & Knight, New York City, for defendants.

### DECISION AND ORDER

BERMAN, District Judge.

## I. Background

This is an action by present and former employees of defendant Norwegian Cruise Lines ("NCL") to recover overtime wages allegedly withheld in violation of (uniform) individual employment contracts, two collective bargaining agreements ("CBAs"), and the Seaman's Wage Act, 46 U.S.C. § 10313. Presently before the Court is Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Motion"). Plaintiffs seek to certify a class of almost five thousand "seafarer-employees who worked on the defendants' ships [and] who worked, or will work, on the various defendant vessels at some point in time during the period from January 1998 through the present...." Amended Complaint, dated June 15, 2001 ("Amended Complaint").

On July 22, 2002, United States Magistrate Judge Andrew J. Peck, to whom the matter had been referred, issued a report and recommendation that Plaintiffs' motion should be granted and the class certified pursuant to Rule 23(b)(3) ("Report").[1] Judge Peck found that Plaintiffs had satisfied the requirements of Rule 23(a), including: (i) numerosity ("The proposed class consists of at least five thousand seafarers who are present or former employees aboard NCL vessels.") (Report at 9); (ii) commonality ("In this case, plaintiffs share common factual and legal questions, such as whether defendants ... failed 'to pay full wages due to their sea[faring] employees without sufficient cause'....") (Report at 11); (iii) typicality ("Plaintiffs here are present and former seafaring employees who allegedly worked overtime but were not paid overtime wages pursuant to the First and Second CBAs, and thus are (or may be) entitled to federal statutory penalty wages.") (Report at 15); and (iv) adequacy of representation ("NCL does not challenge the adequacy of the named plaintiffs.") (Report at 17). Judge Peck further found that certification was appropriate under Rule 23(b)(3), rather than Rule 23(b)(2), because the Plaintiffs "predominantly seek damages and only secondarily seek injunctive relief." Report at 19 ("Accordingly, while the Court finds that certification under Rule 23(b)(3) is appropriate ... the Court recommends deni-

---

1. Fed.R.Civ.P. 23(b)(3) provides that:

 An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the inter-

 est of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

al of plaintiffs' request to certify the class under Rule 23(b)(2).").

On August 7, 2002, Defendant submitted objections to the Report, arguing, *inter alia*, that Judge Peck erroneously concluded that "common questions in this action predominate over individual questions." Defendant's Objections ("Def. Obj.") at 4. Plaintiffs submitted a response to Defendant's Objections on August 21, 2002 ("Pl. Resp."), and on August 28, 2002, Defendant submitted a reply in support of its Objections.[2]

**For the reasons set forth below, the Court adopts the Report in its entirety.**

## II. Standard of Review

A district court evaluating a magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y. 1997) (quoting *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate. *See DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y.1988).

"When considering a motion for class certification, courts should consider the allega-

tions in the complaint as true." *Hirschfeld v. Stone*, 193 F.R.D. 175, 182 (S.D.N.Y.2000) (citing *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978)). "[A] motion for class certification is not an occasion for examination of the merits of the case." *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999).

## III. Analysis

The facts set forth in the Report are incorporated herein by reference.[3] The Court has conducted a *de novo* review of the Report, the record, and the applicable legal authorities, along with the Objections, and finds that the Report's recommendations are supported by the record herein and applicable law. The Court adopts the Report in its entirety.

Defendant's objections center on Judge Peck's determination that Plaintiffs have satisfied the Rule 23(b)(3) predominance requirement—i.e. "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). According to Defendants, "Plaintiffs have not demonstrated (and the [Report] does not address) how the Plaintiffs will be able to prove the elements of their substantive claims using class-wide proof and whether resolution of any common question will benefit all class members in their individual claims. Therefore, substantial individual questions regarding liability, and not only damages, will predominate in the case at bar." Def. Obj. at 4. Defendant also argues that "there is no question, central to all class members' claims, which can be resolved 'once and for all' and advance the litigation of each individual claim." Def. Obj. at 11. Plaintiffs respond that "individual claims do not predominate over class-wide claims, because

---

**2.** By letter dated August 29, 2002, Plaintiffs argued that "the reply brief [submitted by Defendant] should not be read in connection with" the Objections because the Federal Rules of Civil Procedure do not provide for such a submission in connection with review of a magistrate's report and recommendation. *See Alexander v. Evans*, No. 88 Civ. 5309, 1993 WL 427409 at *4 (S.D.N.Y. Oct. 15, 1993) (issue left to district court's discretion as "[n]o explicit provision is made for reply papers"). The issue is largely

academic since Defendant's reply submission repeats arguments raised before Judge Peck and in its Objections.

**3.** Judge Peck issued an earlier report and recommendation dated, July 9, 2002 on Defendant's motion to dismiss. *See Bolanos v. Norwegian Cruise Lines*, 2002 WL 1465907 (S.D.N.Y. July 9, 2002) (Peck, M.J.) adopted by 01 Civ. 4128(RMB), Slip Op. at 2 (Aug. 2, 2002).

plaintiffs rely on common legal theories that arise from a common nucleus of facts based upon a standard contract governing the terms and conditions of employment on all of the ships, in all of the departments and establishing NCL's contractual obligations to the members of the class, all of whom have been damaged by the same wrongful conduct of the defendants, resulting in defendants' liability to all members of the class." Pl. Resp. at 14.

■■■■ The "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir. 2001) (quoting *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000)). Courts should particularly "focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions." *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa,* 280 F.3d at 139.

■■■■ The question of whether (or not) common questions predominate here is a close one. As Judge Peck noted, "Plaintiffs [sic] claims are based on the alleged across-the-board deprivation of overtime wages on NCL vessels." Report at 21. If Plaintiffs are successful in establishing a uniform practice or scheme to deprive Defendant's employees of overtime wages, that may constitute a significant step towards establishing liability to all class members. *See, e.g., Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 86 (S.D.N.Y.2001) ("The central issue posed by the case is whether the Plaintiffs were employees or independent contractors, and

the consequences of the resolution of that issue in relation to minimum wage, overtime, spread-of-hours, obligations of record maintenance, and like issues."). The significant difference among the class members, according to Judge Peck, relates to the level of damages. *See* Report at 20 ("As in many class actions, plaintiffs damages here will differ.") Such differences are generally manageable. *See* Report at 22 ("The Court is intimately familiar with the intricacies of this litigation, having managed discovery and having ruled on various motions. The action is manageable as a class action."); *see also In re Visa,* 280 F.3d at 141 ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.")

As Judge Peck noted, even if it were to turn out that "NCL eventually established at summary judgment or at trial that different vessels and departments kept track of overtime using different methods, differences in departments, job duties, and even factual variations in plaintiffs' claims should not defeat class certification in this case, where all plaintiffs claim they were denied overtime pay while working aboard NCL vessels." Report at 12.

Given the legal arguments of the parties, and accepting the allegations of the Amended Complaint as true, Plaintiffs have established—at this stage—that common questions predominate and that class certification is warranted. The Court remains free to modify the class should future factual circumstances warrant. *See Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir.1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, sub-

class, and decertify as appropriate in response to the progression of the case from assertion to facts."); *see also Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir.1984) ("It is often proper ... for a district court to view a class action liberally in the early stages of litigation, since the class can always be modified or subdivided as issues are refined for trial.").

The Court has considered (and rejected) Defendant's remaining objections. With regard to those portions of the Report to which no objection was made, the Court has reviewed them and found that they are not clearly erroneous.

## IV. Order

The Court incorporates Magistrate Judge Peck's Report [77] by reference, and, for the reasons therein and herein, certifies the proposed class pursuant to Rule 23(b)(3).

## *REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

Presently before the Court is plaintiffs' motion under Fed.R.Civ.P. Rule 23 to certify a class of at least five-thousand seafaring employees who work (or previously worked) on vessels owned by defendant Norwegian Cruise Line ("NCL") and who seek recovery of wages, overtime wages and penalty wages under employment contracts, including two collective bargaining agreements and under the Seaman's Wage Act, 46 U.S.C. §§ 10313. (Dkt. No. 27: Notice of Motion; Dkt. No. 28: Pl. Br. at 1; Dkt. No. 29: Harmon Aff. Ex. 1: Am. Compl.)[1] NCL opposes class certification predominantly on the ground that differences in decisions made by the department heads on each NCL vessel make class certification inappropriate despite the existence of uniform requirements, as to wages and over-

time payments required by the Collective Bargaining Agreements to which NCL and its seafaring employees are parties. NCL's position also, in large part, boils down to the argument that because NCL will prevail on the merits, certification of a plaintiff class is inappropriate. None of NCL's arguments, however, prevent certification of a Rule 23(b)(3) plaintiff class.

For the reasons set forth below, I recommend that the Court certify the proposed plaintiff class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## *FACTS*

### *The Amended Complaint* [2]

Plaintiffs filed the original complaint on May 17, 2001 (Dkt. No. 1) and filed their amended complaint on June 18, 2001 (Dkt. No. 3; Ex. 1).

The amended complaint alleges that defendant Norwegian Cruise Lines ("NCL") owns and operates the cruise ships named as *in rem* defendants and uses those vessels to "provide cruises and vacations to passengers," 75% of whom were United States residents. (Ex. 1: Am. Compl. ¶¶ 1–6.)

The named plaintiffs are seafarers employed by defendant NCL on one or more of the defendant's vessels during some or all of the period January 1, 1998 through the present. (Am.Compl. ¶¶ 7–67.) Specifically, "[o]ne or more of the plaintiffs is presently employed aboard one or more of the defendant vessels...." (Am. Compl. ¶ 67; *see also* Am. Compl. ¶¶ 53–66.) Plaintiffs "have, at various times, been discharged from their respective vessels upon which they are/were employed at the termination of voyages," in U.S. ports or harbors. (Am.Compl. ¶¶ 75–77.)

---

**1.** Referenced numbered exhibits are exhibits to the December 17, 2001 Declaration of Stephen F. Harmon, Esq., counsel for the plaintiffs. (Dkt. No. 29.) Referenced lettered exhibits are exhibits to the January 17, 2002 Declaration of Christopher G. Kelly, counsel for NCL. (Dkt. No. 33.)

**2.** For additional background, *see Bolanos v. Norwegian Cruise Lines Ltd.,* 01 Civ. 4182, 2002 WL 1465907 at *1–3 (S.D.N.Y. July 9, 2002) (Peck, M.J.) (denying in part and granting in part defen-

dants' motion to dismiss.) The Court notes that while this Report & Recommendation largely cites to the plaintiffs' amended complaint, the Court did not limit itself to the amended complaint, but also has considered the depositions and other evidence submitted on the class certification motion, as well as the Court's familiarity with the parties' claims and evidence through the Court's active supervision of the pretrial process in this action.

As to the working of overtime hours without pay, the amended complaint alleges:

73. Upon information and belief, during the period from January 1, 1998 through the present, during each full month that plaintiffs were employed on defendant's ships they worked more than 60.62 hours overtime, or for each month in which they worked less than a full month, they worked more hours per day than would be a pro-rata portion of 60.62 hours overtime per month. Despite working the aforesaid hours, plaintiffs were not paid overtime pay in accordance with contract(s) of employment covering their employment, and said failure to pay was a violation of law and various contracts of employment covering their work, including a collective bargaining agreement between the Norwegian Seamen's Union and defendants for the benefit of the plaintiffs and the class they seek to represent.

(Am. Compl. ¶ 73; *accord,* Am. Compl. ¶ 74 re proposed class members.)

The amended complaint asserts that plaintiffs seek to represent a class of at least 5,000 seafarers, defined as follows:

The class which plaintiffs seek to represent is composed of those unlicensed seafarer-employees who worked on the defendants' ships who worked, or will work, on the various defendant-vessels at some point in time during the period from January 1998 through the present, and into the future for as long as the harm claimed herein continues, and who were and will be covered, as part of the terms and conditions of employment, by a document entitled "Collective Bargaining Agreement Between Norwegian Cruise Line Limited and Norwegian Seamen's Union". These employees were and will be subject to illegal wage withholdings, and/or non-payment of wages.

(Am. Compl. ¶ 83; *see also* Am. Compl. ¶¶ 84–96.)

The amended complaint alleges that "joinder of all class members would create extreme hardship and inconvenience for the affected seafarers," because of their "immense geographical diversity," since they reside in the United States, South America, Europe and Asia. (Am.Compl. ¶ 85.) Also, potential class members may be too poor or ignorant to bring separate actions. (Am. Compl. ¶ 86.)[3] The amended complaint also asserts that "a class action is a superior method of seeking relief because certain members of the class fear retaliation from defendants, with respect to their present employment." (Am.Compl. ¶ 87.)

Plaintiffs' first cause of action is for breach of contract from January 1, 1998 to the present. (Am.Compl. ¶¶ 97–101.) Specifically, plaintiffs allege:

98. Between January 1, 1998 and the present time, plaintiffs, and the class they seek to represent, were employed at various times aboard various of defendant's vessels, as members of the crews thereof and fully performed their duties as crew members and accrued earned wages, including overtime, payable pursuant to contracts of employment, including but not limited to collective bargaining agreements between defendant or its agents and the Norwegian Seamen's Union, which provided for payment of wages for overtime work.

99. Plaintiffs, and the class they seek to represent, at all relevant times herein were beneficiaries of said contracts and collective bargaining agreements.

100. Upon information and belief, the defendant, in breach of said contracts and/or collective bargaining agreements, the common law, U.S. statutory law, and the general maritime law, and notwithstanding its obligations to plaintiffs thereunder, failed to make payment of the full wages due to said plaintiffs and the class they seek to represent.

(Am.Compl. ¶¶ 98–100.)

Plaintiffs' second cause of action asserts that the failure to pay full overtime wages "pursuant to contracts and collective bargaining agreements, the common law, U.S. statu-

---

**3.** The amended complaint estimates that each individual's withheld wages was $3,900 per year, but the total unpaid wages due the class since January 1, 1998 is approximately $58 million. (Am.Compl. ¶ 95.)

tory law and the general maritime law," is a violation of 46 U.S.C. § 10101 *et seq.* (Am. Compl. ¶¶ 103–04.)

Plaintiffs' third cause of action asserts that "[b]y reason of [defendants'] refusal and neglect to pay the seafarers' their full earned wages when same became due and owing, and said non-payment being done without sufficient cause, pursuant to 46 U.S.C. § 10313 plaintiffs are entitled to penalty wages of two days pay for each and every day during which payment of their duly earned wages have been delayed without sufficient cause." (Am.Compl. ¶ 107.) [4]

Plaintiffs' fourth cause of action is for "specific performance" and injunctive relief for "ongoing" and continuing violations. (Am.Compl. ¶¶ 112–14.)

### The Collective Bargaining Agreements

Plaintiffs' employment on NCL vessels is governed by two Collective Bargaining Agreements ("CBAs"), one in effect in 1998 [5] (Ex. 3: 1996–1997 [the "First"] CBA, Art. 21) and another in effect from 1999 to the present (Ex. 4: 1999–2002 [the "Second"] CBA, Art. 21). The CBAs address the "pay and working conditions" of seafaring personnel. (First CBA at 1; *see also* Second CBA at 1; Ex. A: Gartland Dep. at 67.) The CBAs specify the "pay and overtime rates" for specific job categories on NCL vessels. (First CBA, Art. 2 & 6 & Pay Scale; Second CBA, Art. 2 & 6 & Pay Scale; *see also* Ex. B: NCL Minimum Pay Scales for Groups B–D.) [6]

### NCL's Motion to Dismiss

Defendant NCL moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that: (1) plaintiffs' first cause of action for breach of contract for wages preceding May 17, 2000 is time barred by the Bahamian one-year statute of limitations applicable under the choice of law provisions of the First and Second CBAs; (2) plaintiffs' second and third (federal statutory) causes of action for overtime wages and wage penalties should be dismissed pursuant to the doctrine of laches; and (3) plaintiffs' third cause of action for federal statutory wage penalties should be dismissed on the additional ground that plaintiffs failed to show that "they made an effective demand for wages." (Dkt. No. 13: NCL Motion to Dismiss Br. at 5–21.) *See Bolanos v. Norwegian Cruise Lines Ltd.,* 01 Civ. 4182, 2002 WL 1465907 at *3 (S.D.N.Y. July 9, 2002) (Peck, M.J.).[7]

On July 9, 2002 this Court recommended that NCL's motion to dismiss be granted in part and denied in part. *See Bolanos v. Norwegian Cruise Lines Ltd.,* 2002 WL 1465907 at *4–9. Specifically, this Court recommended that "NCL's motion to dismiss should be [1] GRANTED on statute of limitations grounds as to plaintiffs' first cause of action for wages prior to May 17, 2000 under the First Collective Bargaining Agreement only as to vessels that flew the Bahamian flag; [2] GRANTED as to plaintiffs' first cause of action for breach of contract on statute of limitations grounds as to plaintiffs' wage claims prior to May 17, 2000 under the Second Collective Bargaining agreement; and [3] DENIED in all other respects." *Bolanos v. Norwegian Cruise Lines Ltd.,* 2002 WL 1465907 at *9.

---

**4.** The amended complaint also states that if the court determines that a portion of the wage penalty claim should have been brought sooner than it was, "then the court should grant plaintiffs and the proposed class damages for that portion of the claim for penalty wages which the court shall determine was seasonably asserted, plus penalty wages for the subsequent, and ongoing violations." (Am.Compl. ¶ 109.)

**5.** The terms of the First CBA were extended to December 31, 1998. (*See* Am. Compl. ¶ 73)

**6.** The First and Second CBAs both provide that "[o]vertime shall be recorded individually and in duplicate either by the Master or the head of the department. Such record shall be handed to the Employee for approval every fortnight or at shorter intervals. Both copies must be signed by the Master and/or department head as well as by the Employee, after which the record is final." (First CBA, Art. 6.5; *see also* Second CBA, Art. 6.5.)

**7.** NCL originally moved to dismiss plaintiffs' fourth cause of action for injunctive relief on the ground that plaintiffs "lack[ed] standing." *See Bolanos v. Norwegian Cruise Lines Ltd.,* 2002 WL 1465907 at *3 n. 7. By letter to the Court dated July 3, 2002, NCL withdrew that portion of its motion to dismiss addressed to the fourth cause of action. *Id.*

*Plaintiffs' Present Motion for Class Certification*

Presently before this Court is plaintiffs' motion to certify a class of "approximately 5,000 or more seafarers," of "over fifty (50) different nationalities", "from around the world," "formerly or presently employed by NCL aboard its ships during the period from and after January 1, 1998," who filled positions in many departments of NCL vessels including Hotel/Housekeeping, Galley/Provision, Dining Room, and Bar Departments, and who were entitled to overtime compensation under the CBAs. (Dkt. No. 28: Pl. Br. at 4–6; *see also* Exs. 3–4: First & Second CBAs Art. 6.3 & Attached Pay Scale; Ex. 1: Am. Compl. ¶¶ 83–96.)

### ANALYSIS

Rule 23(a), Fed.R.Civ.P., sets forth the requirements for class certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *see generally, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132–33 (2d Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002); *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 155–56 & n. 1 (2d Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002); *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999), *cert. denied*, 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000); *Marisol A. v. Giuliani*, 126 F.3d 372, 375–76 & n. 3 (2d Cir.1997); *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 169 (S.D.N.Y.1997) (Knapp, D.J. & Peck, M.J.); 5 James W. Moore, *Moore's Federal Practice* § 23.20 at 23–55 (Matthew Bender 3d ed.2002) ("A class must satisfy all four of these requirements [of Rule 23(a)] before it may be certified under Rule 23."); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil 2d* § 1759 at 96–97 (2d ed.1986).

■ In addition to satisfying the threshold requirements of Rule 23(a), "a class action may be maintained only if it qualifies under at least one of the categories provided in Rule 23(b)." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 133; *see also, e.g.* 5 *Moore's Federal Practice* § 23.20 at 23–55. Plaintiffs here seek certification under Rule 23(b)(2) as to injunctive relief and Rule 23(b)(3) as to damages. (*See* Dkt. No. 28: Pls. Br. at 19–22; Dkt. No. 37: Pls. Reply Br. at 6–10.) As the Second Circuit has recently stated:

Rule 23(b)(2) allows for the maintenance of a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Rule 23(b)(3) permits class certification "if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Factors relevant to the superiority of a class action under Rule 23(b)(3) include:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*Id.* "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, [2153] (1974) (internal quotation marks omitted).

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 133; *see generally* 5 *Moore's Federal Practice* § 23.40.

## I. RULE 23(a)

### A. Rule 23(a)(1): Numerosity

The proposed class consists of at least five thousand seafarers who are present or former employees aboard NCL vessels. (Ex. 1: Am. Compl. ¶ 84; *see also* Dkt. No. 28: Pls. Br. at 13–15.) Defendant NCL does not dispute that the proposed class is sufficiently numerous and that joinder would be impractical. (*See* Dkt. No. 34: NCL Br. at 5 n. 4; *see also* Dkt. No. 37: Pl. Reply Br. at 1 n. 2.). *See, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.) ("numerosity is presumed at a level of 40 members"), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995); *Korn v. Franchard Corp.*, 456 F.2d, 1206, 1209 (2d Cir.1972); *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 170 (S.D.N.Y.1997) (Knapp, D.J. & Peck, M.J.) (certifying class of "several thousand investors"); *In re Frontier Ins. Group Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y.1997); *In re Chase Manhattan Corp. Sec. Litig.*, 90 Civ. 6092, 1992 WL 110743 at *1 (S.D.N.Y. May 13, 1992); *see generally* 5 *Moore's Federal Practice* § 23.22; 7A C. Wright & A. Miller, *Federal Practice & Procedure: Civil 2d* § 1762.

Plaintiffs plainly satisfy the Rule 23(a)(1) numerosity requirement.

### B. Rule 23(a)(2): Commonality

■ " 'The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact.' " *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir.2001) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997)), *cert. denied*, 122 S.Ct. 1349 (2002); *see also, e.g., In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 170 (S.D.N.Y.1997) (Knapp, D.J. & Peck, M.J.). This requisite "does not mean that all issues must be identi-cal as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant class treatment." *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y.), *appeal dismissed*, 833 F.2d 1002 (2d Cir.1986), *cert. denied*, 481 U.S. 1024, 107 S.Ct. 1911, 95 L.Ed.2d 517 (1987); *accord, In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. at 170; *In re Chase Manhattan Corp. Sec. Litig*, 90 Civ. 6092, 1992 WL 110743 at *1 (S.D.N.Y. May 13, 1992). "[T]he commonality requirement is satisfied if the class shares even one common question of law or fact," and "factual differences in the claims of the class do not preclude a finding of commonality." 5 *Moore's Federal Practice* § 23.23[2].

■ Defendant NCL argues that "Plaintiffs have failed to meet their burden of showing commonality and typicality between their claims and those of the widespread multi-facility class they seek to represent" because "the evidence before the Court, even taken as true for present purposes, establishes nothing more than sporadic and·isolated instances of errors in overtime payments not meeting the commonality and typicality requirements of Rule 23(a) for the expansive class Plaintiffs propose." (Dkt. No. 34: NCL Br. at 4, 6; *see also* Dkt. No. 36: Carr Decl. ¶ 6 (a new system of "freestyle cruising" providing cruise ship passengers with more choices means that "[t]here is less likelihood that seamen will work similar hours from week to week.").) NCL further argues that because NCL "Department heads make the decision" to assign overtime hours to individual employees, plaintiffs "have therefore failed to demonstrate sufficient centralized decision-making with regard to the specific policy complained of in their Amended Complaint to satisfy the commonality and typicality requirements of Rule 23(a)." (NCL Br. at 9.) Finally, NCL argues that plaintiffs failed to "demonstrate that any company-wide 'pervasive plan and scheme' existed (because none did) and thus no commonality has been established." (NCL Br. at 9–12.) The Court disagrees with NCL.

In this case, plaintiffs share common factual and legal questions, such as whether de-

fendants: (1) "breach[ed] their employment contracts with the class"; (2) failed "to pay full wages due their sea[faring] employees without sufficient cause"; and (3) deducted or withheld wages in violation of 46 U.S.C. § 10313; and, if so, whether plaintiffs and the class members are "entitled to the return of these wages and to penalty wages" under the Seaman's Wage Act. (*See* Ex. 1: Am. Compl. ¶ 88; *see also* Dkt. No. 28: Pl. Br. at 15–17.) These questions satisfy the commonality requirement. *See, e.g., Korn v. Franchard Corp.,* 456 F.2d 1206, 1210 (2d Cir.1972); *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *In re Towers Fin. Corp. Noteholders Litig.,* 177 F.R.D. at 170; *Krueger v. New York Tel. Co.,* 163 F.R.D. 433, 439 (S.D.N.Y.1995); *In re Frontier Ins. Group Inc. Sec. Litig.,* 172 F.R.D. 31, 40 (E.D.N.Y.1997); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 206–07 (S.D.N.Y.1995); *In re Chase Manhattan.,* 1992 WL 110743 at *1; *Tedesco v. Mishkin,* 689 F.Supp. 1327, 1334 (S.D.N.Y.1988).

Even if NCL eventually establishes at summary judgment or at trial that different vessels and departments kept track of overtime using different methods, differences in departments, job duties, and even factual variations in plaintiffs' claims should not defeat class certification in this case, where all plaintiffs claim they were denied overtime pay while working aboard NCL vessels.[8] *See, e.g., Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291–92 (2d Cir.1999) (reversing district court's decision that defendant company's "policy of delegating discretionary authority to supervisors to make certain employment decisions affecting discipline and promotion precluded a finding of commonality and typicality" because "the fact that the Class Plaintiffs challenge the subjective components of company-wide employment practices does not bar a finding of commonality."), *cert. denied,* 529 U.S. 1107,

120 S.Ct. 1959, 146 L.Ed.2d 791 (2000); *Tennie v. City of New York Dep't of Social Servs.,* 83 Civ. 0884, 1987 WL 6156 at *2–4 (S.D.N.Y. Jan. 30, 1987) (certifying class of female black and Hispanic children's counselors who were transferred from multiple children institutions to various other city departments because "[r]egardless of present job title and workplace, it is alleged that all the former children's counselors are discriminated against for the same reasons in all cases and as a result receive lower salaries and fewer benefits with co-workers with the same duties and responsibilities."); *see generally* 7A C. Wright & A. Miller, *Federal Practice & Procedure: Civil 2d* § 1763.

In addition, NCL's argument that plaintiffs have not established commonality and typicality because they have not proven a uniform scheme to deprive plaintiffs of overtime pay has no merit. Essentially, NCL is arguing that plaintiffs' class certification motion should fail because plaintiffs' case should fail on the merits. However, it is well-established that "a motion for class certification is not an occasion for examination of the merits of the case." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 135 (2d Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002); *see, e.g., Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 157 (2d Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002); *Caridad v. Metro–North Commuter R.R.,* 191 F.3d at 291 (" 'Nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.' "); *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 570–72 (2d Cir.), *cert. denied,* 459 U.S. 838, 908, 103 S.Ct. 86, 213, 74 L.Ed.2d 80, 170 (1982); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732

---

8. In any event, NCL concedes that NCL's "policy is the CBA" and all managers "follow the CBA" regardless of the ultimate calculations unique to a particular employee. (Ex. C: Carr Dep. at 34–35, 49, 54) (NCL has "many managers, many supervisors. They are allowed to use their own methods [of tracking overtime] as long as they follow the CBA;" *see also id.* at 43, 46, 49–50, 53–55, 115 (overtime is paid under the CBA); NCL Br. at 8 ("the record shows that the only centralized NCL policy is that NCL pays overtime in compliance with the CBA; records overtime on O.T. Recaps and monthly trial registers; and that the trial registers are signed by each crew member.").)

(1974); *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 440, 442 (S.D.N.Y.1995);[9] 7A C. Wright & A. Miller, *Federal Practice & Procedure; Civil 2d* § 1759 at 98–102.

### C. *Rule 23(a)(3): Typicality*

 "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3).... The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997). Typicality requires that the representative plaintiffs' claims are typical of the class, and "'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed*, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993)); *see also, e.g., In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 170 (S.D.N.Y.1997) (Knapp, D.J. & Peck, M.J.); *In re Frontier Ins. Group Inc. Sec. Litig.*, 172 F.R.D. 31, 40–41 (E.D.N.Y.1997); *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 207–08 (S.D.N.Y.1995); *In re Chase Manhattan Corp. Sec. Litig.*, 90 Civ. 6092, 1992 WL 110743 at *2 (S.D.N.Y. May 13, 1992); *see generally* 5 *Moore's Federal Practice* § 23.23[3], § 23.24; 7A C. Wright & A. Miller, *Federal Practice & Procedure: Civil 2d* § 1764.

 As discussed above, NCL argues that "[t]he practice of which Plaintiffs complain [failure to pay overtime wages] is not centrally controlled and thus could not be the result of a NCL company-wide plan and scheme" and "Plaintiffs' conclusory allegations fail to sufficiently demonstrate that any company-wide 'pervasive plan and scheme' existed." (Dkt. No. 34: NCL Br. at 8, 9.)

 As with the commonality requirement, the typicality requirement "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact 'occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir.1999) (quoting *Krueger v. New York*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995)), *cert. denied*, 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." 5 *Moore's Federal Practice* § 23.24[4]. Plaintiffs here are present or former NCL seafaring employees who allegedly worked overtime but were not paid overtime wages pursuant to the First and Second CBAs, and thus are (or may be) entitled to federal statutory penalty wages. (*See* pages 4–5 above.) "'As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality.'" *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. at 170 (quoting *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. at 208).

"Because typicality does not require that the class representative claims be identical to those of the class, differences in damages will not destroy typicality." 5 *Moore's Federal Practice* § 23.24[5]. (*See also* discussion at page 20 below.)

---

9. *But see Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675–76 (7th Cir.) (Easterbrook, C.J.) ("The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it.... Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23."), *cert. denied*, —— U.S. ——, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001); *see also* W. Gordon Dobie, "Presumed Guilty: Assuming the Factual Truthfulness of Plaintiff's Complaint and the Class Certification Decision," 71 U.S.L.W. at 2019–21 (2002). Judge Easterbrook's decision, however, has not been adopted by the Second Circuit (or the district courts within the Second Circuit).

"Typicality will not be present if the class representative's claim is subject to one or more unique defenses that likely will be central to the litigation." 5 *Moore's Federal Practice* § 23.24[6]. Here, NCL does not claim that the named class representatives are subject to any unique defenses.

For all these reasons, plaintiffs have established typicality.

### D. *Rule 23(a)(4): Adequacy of Representation*

 The adequacy of representation inquiry is two-fold: plaintiffs must demonstrate that (1) " 'class counsel is qualified, experienced, and generally able to conduct the litigation,' " and (2) "there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir.1997) (citing & quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed*, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993)); *accord, e.g., In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 170–71 (S.D.N.Y.1997) (Knapp, D.J. & Peck, M.J.); *see also, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 & n. 20, 117 S.Ct. 2231, 2250 & n. 20, 138 L.Ed.2d 689 (1997); *In re Frontier Ins. Group Inc. Sec. Litig.*, 172 F.R.D. 31, 43 (E.D.N.Y.1997); *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y.1995); *In re Chase Manhattan Corp. Sec. Litig.*, 90 Civ. 6092, 1992 WL 110743 at *2 (S.D.N.Y. May 13, 1992); 5 *Moore's Federal Practice* § 23.53[3]; 7A C. Wright & A. Miller, *Federal Practice & Procedure: Civil 2d* ¶¶ 1765, 1769.1.

 " '[I]n determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance.' " *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. at 171 (quoting *In re Frontier Ins. Group Inc. Sec. Litig.*, 172 F.R.D. at 44) (internal quotations omitted). NCL does not challenge the adequacy of class counsel. (Dkt. No. 34: NCL Br. 5 n. 4) The Court has closely supervised extensive discovery practice in this action. While the Court at times has expressed displeasure at both sides' counsel's handing of specific discovery disputes or issues, the Court believes that plaintiffs' counsel has shown that they are qualified and competent and have the ability to represent the class. *See Guenther v. Sedco, Inc.*, 866 F.Supp. 786, 787–88 (S.D.N.Y.1994) (court certified a class of seamen bringing action for violation of Seamen's Wage Act; Paul T. Hoffman was counsel for plaintiffs).

NCL also does not challenge the adequacy of the named plaintiffs. (NCL Br. at 5 n. 4.) The named plaintiffs have shown their commitment to the class by participating in discovery. The Court is not aware of any defenses peculiar to the named plaintiffs, or any reason why their claims are not typical of the class. *See generally* 5 *Moore's Federal Practice* § 23.54[b]. Accordingly, the Court recommends approval of the remaining named plaintiffs as the class representatives.

## II. *RULE 23(b)(2): CERTIFICATION IS NOT APPROPRIATE BECAUSE THIS ACTION IS PRIMARILY ONE FOR MONETARY DAMAGES*

As noted above, plaintiffs seek to certify a class under Rule 23(b)(2) for prospective injunctive relief. (Dkt. No. 28: Pls. Br. at 19–20.)

Rule 23(b)(2) provides that a class action may be maintained if the requirements of Rule 23(a) are satisfied (as they are here), and

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

"Class actions under Rule 23(b)(2) are proper if injunctive or declaratory relief would be appropriate for an entire class. The Rule may be utilized if a party's action or inaction affects an entire class seeking relief." 5 *Moore's Federal Practice* § 23.43[1][a]. "As a general rule, class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary damages. However, if money damages

are merely incidental to plaintiffs' request for injunctive or declaratory relief, class actions may be certified under Rule 23(b)(2)." 5 *Moore's Federal Practice* § 23.43[3][a]; *see, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 146–47 (2d Cir. 2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002); *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 164–67 (2d Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002).[10]

■■■ Here, plaintiffs seek both monetary damages (Ex. 1: Am. Compl. ¶¶ 94–96, 101, 105, 110) and injunctive relief (*id.* ¶ 114). Indeed, the amended complaint asserts that: "Plaintiffs estimate that the total unpaid wages due the class since January 1998, in breach of their contracts, is approximately $58 million." (Am.Compl. ¶ 95.) It is clear to the Court from the amended complaint, and from the Court's supervision of discovery in this action, that the plaintiffs predominantly seek damages and only secondarily seek injunctive relief; put differently, the request for monetary damages in this case is not merely incidental to plaintiffs' request for injunctive relief.[11]

Accordingly, while the Court finds that certification under Rule 23(b)(3) is appropriate, *see* pages 20–22 below, the Court recommends denial of plaintiffs' request to certify the class under Rule 23(b)(2).

### III. *RULE 23(b)(3)*

#### A. *Rule 23(b)(3): Predominance*

To satisfy Rule 23(b)(3)'s predominance requirement, plaintiffs must demonstrate that common questions of law or fact relating to the class predominate over individual questions. Fed.R.Civ.P. 23(b)(3). The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997); *accord, e.g., In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 171 (S.D.N.Y. 1997) (Knapp, D.J. & Peck, M.J.); *see generally* 5 *Moore's Federal Practice* § 23.46; 7A C. Wright & A. Miller, *Federal Practice & Procedure: Civil 2d* § 1777 at 516–18.

NCL argues that "[c]ertification should be denied under 23(b)(3)" because "each class member must individually prove actual overtime worked in the unique circumstances of his or her position, supervisor, department, ship, time and place" and "the requirement of individual damages calculations in the specific circumstances of this case are yet another factor weighing heavily against certification." (Dkt. No. 34: NCL Br. 16, 20, 21.)

"Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002). As in many class actions, plaintiffs damages here will differ. However, "[w]hen determining whether common questions predominate courts 'focus on the liability issue . . . and if the liability issue is common to the

---

**10.** *See also, e.g., Dodge v. County of Orange*, 208 F.R.D. 79, —— (S.D.N.Y.2002); *Augustin v. Jablonsky*, No. 99 CV 3126, 2001 WL 770839 at *8–9 (E.D.N.Y. Mar. 8, 2001); *Parker v. Time Warner Entm't Co.*, 198 F.R.D. 374, 377–81 (E.D.N.Y. 2001); *Gibbs v. E.I. DuPont De Nemours & Co.*, 876 F.Supp. 475, 480–81 (W.D.N.Y.2001).

**11.** *See, e.g., Augustin v. Jablonsky*, 2001 WL 770839 at *9 ("[T]he non-incidental nature of the compensatory and punitive damages sought by plaintiffs demonstrates that their money damages claims predominate over their claims for declaratory and injunctive relief."); *compare, Gulino v. Board of Educ.*, 201 F.R.D. 326, 334 (S.D.N.Y. 2001) ("In the present case, plaintiffs have dropped their claims for compensatory and punitive damages. This being the case, this court

finds that plaintiffs' remaining claims for monetary relief do not predominate over plaintiffs' claims for injunctive and declaratory relief. Therefore, plaintiffs are not barred from bringing this action under Rule 23(b)(2)"). *Gibbs v. E.I. Du Pont De Nemours & Co.*, 876 F.Supp. at 481 (class certified under Rule 23(b)(2) because relief plaintiffs seek is "injunctive in nature rather than 'predominantly money damages'").

The Court notes that if, as recommended, a Rule 23(b)(3) class is certified here, thus giving notice and the opportunity to opt out to class members, it would not be error to certify the class under Rule 23(b)(2) also, *see, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 147, but it would add nothing to do so and in fact would complicate matters.

class, common questions are held to predominate over individual questions.'" *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 114 F.R.D. 48, 52 (S.D.N.Y.1987) (quoting *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981)); *see also, e.g.,* 5 *Moore's Federal Practice* § 23.46[2][a] ("In actions for money damages under Rule 23(b)(3), courts usually require individual proof of the amount of damages each member incurred. Nevertheless, if common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied even if individual damages issues remain.") (citation omitted).

Plaintiffs claims are based on the alleged across-the-board deprivation of overtime wages on NCL vessels. (*See* pages 4–5 above.) The Rule 23(b)(3) predominance requirement is satisfied here.

### B. *Rule 23(b)(3): Superiority*

Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the Court's inquiry into the superiority of a class action:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3); *see generally* 5 *Moore's Federal Practice* § 23.48, § 23.49; 7A C. Wright & A. Miller, *Federal Practice & Procedure: Civil 2d* § 1777 at 519–20.

█ It is highly unlikely that individual plaintiffs would shoulder the burden and cost of this vast and complex litigation. Nor has the Court been made aware of any individual plaintiffs who are interested in "individually controlling the prosecution ... of separate

actions," or of any pending litigation by any class member against NCL or any of its vessels. The interests of justice will be well served by resolving the common disputes of potential class members in one forum. Individual suits would not be cost effective, especially in light of the fact that many of the plaintiffs are foreign nationals. This Court is intimately familiar with the intricacies of this litigation, having managed discovery and having ruled on various motions. The action is manageable as a class action; it is not economically maintainable as individual actions. *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140–41 (2d Cir.2001) (failure to certify under (b)(3) is "disfavored and should be the exception rather than the rule") (internal quotations omitted), *cert. denied,* —— U.S. ——, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002); *Korn v. Franchard Corp.,* 456 F.2d 1206, 1214 (2d Cir.1972); *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *In re Towers Fin. Corp. Noteholders Litig.,* 177 F.R.D. 167, 172 (S.D.N.Y.1997)(Knapp, D.J. & Peck, M.J.); *In re Frontier Ins. Group Inc. Sec. Litig.,* 172 F.R.D. 31, 48–49 (E.D.N.Y.1997); *In re Chase Manhattan Corp. Sec. Litig.,* 90 Civ. 6092, 1992 WL 110743 at *3 (S.D.N.Y. May 13, 1992). A class action is clearly the superior method of adjudication here.

### CONCLUSION

For the reasons set forth above, the Court should certify the proposed plaintiff class pursuant to Rule 23(b)(3).

### SCHEDULING ORDER

The parties are ordered to confer and submit to the Court by *August 2, 2002* a joint proposed plan for and language of notice to the class pursuant to Rule 23(c)(2).[12]

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Proce-

---

12. In the event the parties cannot agree in full, they are to submit a joint proposal containing plaintiffs' and defendants' versions of those provisions or sentences on which they disagree, along with supporting legal argument as to their differing proposals. The Court further notes that the requirement to submit the Rule 23(c)(2) notice and proposal by August 2, 2002 is not stayed by the filing of any objections to this Report & Recommendation (although notice will not actually be sent to the class until Judge Berman rules on any such objection, if any is filed).

dure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Berman. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72, 6(a), 6(e).

Dated: July 22, 2002.